# Applicability of EEOC Proposed Final Rule to the Department of Veterans Affairs

The Veterans' Benefits Act is not inconsistent with the proposed Equal Employment Opportunity Commission final rule on hearings for federal employees' EEO complaints, and therefore the Department of Veterans Affairs would be subject to the rule to the same extent as other executive branch agencies.

September 28, 1999

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERANS AFFAIRS

This memorandum responds to your request for our opinion whether, in light of the Veterans' Benefits Act of 1997, Pub. L. No. 105–114, 111 Stat. 2277 (codi-fied as amended in scattered sections of 38 U.S.C.) ("VBA"), the Department of Veterans Affairs ("VA" or "Department") would be subject to a proposed final rule promulgated by the Equal Employment Opportunity Commission ("EEOC" or "Commission") concerning the procedures to be followed in employment discrimination cases against federal sector employers in which the complainant requests a hearing. *See* Letter for Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, from Leigh A. Bradley, General Counsel, Department of Veterans Affairs, *Re: Request for an Opinion on Whether the Department of Veterans Affairs is Subject to EEOC's Proposed Final Rule Revising 29 C.F.R. Part 1614 Insofar as Proposed Sections 29 C.F.R. § 1614.109(i) and § 1614.110(a) Abrogate the Statutory Authority of VA's Office of Employment Discrimination Complaint Adjudication to Make Final, Dispositive Decisions as to the Merits of Employment Discrimination Complaints* (Apr. 5, 1999) ("VA Request"). For the reasons discussed below, we conclude that the provisions of the VBA are not inconsistent with the EEOC's proposed final rule and that VA would therefore be subject to the proposed final rule to the same extent as other executive branch agencies.

## Background

### A. Title VII and the Proposed Regulation

Title VII of the Civil Rights Act of 1964, as amended (codified at 42 U.S.C.A. §§ 2000e to 2000e–17 (West 1994 & Supp. 1999)) ("Title VII"), protects most federal employees against employment discrimination on the basis of race, color, religion, sex, or national origin. *See* Equal Employment Opportunity Act of 1972, Pub. L. No. 92–261, sec. 11, § 717(a), 86 Stat.103, 111 (codified as amended at 42 U.S.C.A. § 2000e–16(a)) ("section 717"). The statute authorizes aggrieved

federal employees to sue for relief under certain circumstances. In particular, section 717(c) of Title VII provides:

> Within 90 days of receipt of notice of *final action taken by a department, agency, or unit* referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e–16(c) (1994) (emphasis added). This provision's reference to "final action" by an agency arguably assumes that the agency has a definitive decisional role regarding administrative complaints apart from the role played by the EEOC.

Under current regulations, once an EEOC administrative judge ("AJ") has rendered a decision on an EEO complaint, the respondent agency may then reject or modify the AJ's decision, including by substituting the agency's preferred remedy, *see* 29 C.F.R. §§ 1614.109–110 (1998), subject to the complainant's right to administrative appeal, *see* 29 C.F.R. §§ 1614.401, 1614.403 (1998). According to the EEOC, the current system has engendered dissatisfaction based on a concern that federal agencies are allowed to judge their own behavior. *See* Proposed Final Rule (attachment to VA Request) at 21 ("The Commission strongly believes that allowing agencies to reject or modify an administrative judge's findings of fact and conclusions of law and to substitute their own decisions leads to an unavoidable conflict of interest and creates a perception of unfairness in the federal EEO system.").

The EEOC has issued a Proposed Final Rule ("PFR") that, among other provisions, would change the current system by limiting the discretion of an agency to take a "final action" that modifies the AJ's determination. In the Commission's view, the proposed new regulations preserve the opportunity for final agency action contemplated by section 717(c) of Title VII:

> Administrative judges will issue decisions on all complaints referred to them for hearings. Agencies will have the opportunity to take final action on the complaint by issuing a final order within 15 days of receipt of the administrative judge's decision. The final order will notify the complainant whether or not the agency will fully implement the decision of the administrative judge and will contain notice of the complainant's right to appeal to EEOC. If the agency's final order does not fully implement the decision of the administrative judge, the agency must simultaneously file an appeal of the decision with EEOC. In this way, agencies will take final action on complaints referred to administrative judges by issuing a final order, but they will not introduce new evidence or write a new decision in the case.

PFR at 21–22.[1]

**B. The Veterans' Benefits Act of 1997 and VA's Objection to the Proposed Regulation**

Unlike other executive branch departments and agencies, VA's system for the processing of employment discrimination complaints is governed by an agency-specific statute, the Veterans' Benefits Act of 1997. The question here is whether EEOC's proposed regulation conflicts, not with the "final action" reference in Title VII itself, but with a provision of the VBA that creates a new office within the Department of Veterans Affairs and authorizes it to make the "final agency decision within the Department on the merits of any employment discrimination complaint." VBA, Sec. 102(a)(1), § 319(b)(1), 111 Stat. at 2280. You contend that the EEOC lacks authority to limit VA's latitude in taking final action on complaints because the VBA uniquely reserves to VA's Office of Employment Discrimination Complaint Adjudication the authority to make final decisions on EEO complaints involving VA. VA Request at 3.

Congress enacted the VBA in response to complaints that VA's complaint adjudication system did not adequately protect victims of sexual harassment.[2] The

---

[1] We offer no opinion whether the EEOC's PFR is consistent with Title VII and otherwise lawful, and instead consider only whether, assuming the PFR is lawful under Title VII, VA alone is exempt from its provisions by virtue of the VBA. The EEOC's current proposal modifies an earlier one that the EEOC has since abandoned. *See* PFR at 20–21 A number of executive branch agencies objected to the earlier proposal on several grounds, including that it would be inconsistent with the references in section 717(c) of Title VII to a "final action" by the agency as a prerequisite to a civil suit. *See id.* at 20 The Commission, without agreeing to the objecting agencies' interpretation of section 717(c) and without seeking a legal opinion from this Office, "decided to revise the proposal in order to make needed improvements in the procedures while recognizing the concerns expressed by the agencies" *Id.* at 21.

[2] *See, e g*, H.R Rep. No 105–292, at 5 (1997) (reporting conclusion "that a culture of tolerance of sexual harassment and abusive behavior exists at certain VA facilities, and that the policy of 'zero tolerance' of sexual harassment is insufficient to address these problems"), *see also* David Dahl, *VA Must Get Tough on Harassment,* St Petersburg

Act generally directs the Secretary of Veterans Affairs to "take steps to ensure that the [complaint resolution] system is administered in an objective, fair, and effective manner and in a manner that is perceived by employees and other interested parties as being objective, fair, and effective." VBA, sec. 101(a)(1), § 516(a), 111 Stat. at 2278. To further that goal, Congress created a new office within VA, the Office of Employment Discrimination Complaint Adjudication ("OEDCA"), to act as a quasi-independent adjudicator of employment discrimination complaints against the Department. *Id.* sec. 102(a)(1), § 319, 111 Stat. at 2280. The VBA provides that the Director of OEDCA "reports directly to the Secretary or the Deputy Secretary concerning matters within the responsibility of the Office," and "is responsible for making the *final agency decision* within the Department on the merits of any employment discrimination complaint filed by an employee, or an applicant for employment, with the Department." *Id.* sec. 102(a)(1), § 319(a)(3), (b)(1) (emphasis added).[3]

You argue that the EEOC lacks authority to limit VA's latitude in taking final agency action on complaints because the VBA uniquely reserves to VA's OEDCA the authority to make final decisions on EEO complaints involving VA. You assert that the provisions of the VBA that make the director of OEDCA "responsible

---

Times, Nov 11, 1997, at 3A, *available in* 1997 WL 14076191 ("Alarmed by the case of a sexual harasser . . . Congress on Monday passed a bill that forces the Department of Veterans Affairs to set up some of the strictest anti-harassment measures in the government The legislation, approved over the objections of the VA, creates an office to hear employee complaints and empowers Congress and an outside auditor to oversee the department's performance in policing harassers. Congress acted after learning that [a] North Carolina VA hospital director was transferred to [another facility], with a six-figure salary, even though a VA investigation found he sexually harassed an employee and spoke offensively to two others.").

[3] The full text of the provision establishing the OEDCA follows·

**Office of Employment Discrimination Complaint Adjudication**

(a)(1) There is in the Department an Office of Employment Discrimination Complaint Adjudication. There is at the head of the Office a Director.

(2) The Director shall be a career appointee in the Senior Executive Service.

(3) The Director reports directly to the Secretary or the Deputy Secretary concerning matters within the responsibility of the Office.

(b)(1) The Director is responsible for making the final agency decision within the Department on the merits of any employment discrimination complaint filed by an employee, or an applicant for employment, with the Department. The Director shall make such decisions in an impartial and objective manner.

(2) No person may make any ex parte communication to the Director or to any employee of the Office with respect to a matter on which the Director has responsibility for making a final agency decision

(c) Whenever the Director has reason to believe that there has been retaliation against an employee by reason of the employee asserting rights under an equal employment opportunity law, the Director shall report the suspected retaliatory action directly to the Secretary or Deputy Secretary, who shall take appropriate action thereon

(d)(1) The Office shall employ a sufficient number of attorneys and other personnel as are necessary to carry out the functions of the Office Attorneys shall be compensated at a level commensurate with attorneys employed by the Office of the General Counsel.

(2) The Secretary shall ensure that the Director is furnished sufficient resources in addition to personnel under paragraph (1) to enable the Director to carry out the functions of the Office in a timely manner

(3) The Secretary shall ensure that any performance appraisal of the Director of the Office of Employment Discrimination Complaint Adjudication or of any employee of the Office does not take into consideration the record of the Director or employee in deciding cases for or against the Department

38 U S.C § 319 (Supp III 1997).

for making the final agency decision within the Department on the merits of any employment discrimination complaint'' would exempt VA from the operation of the EEOC's proposed new procedural rules even if those rules lawfully bind other federal agencies. In your view, ''the adjudication authority granted to the [OEDCA] Director in Section 102 [of the VBA] cannot be limited in any way by EEOC regulations[,] which may be inconsistent with the statutory grant of dispositive authority provided to the Director of OEDCA.'' VA Request at 3. For the reasons set forth below, we conclude that the proposed EEOC rule is not inconsistent with section 102 of the VBA.

## Discussion

Assuming as you do for purposes of your request that the Proposed Final Rule permits agencies in general to take sufficient final action to comply with section 717(c) of Title VII, there is no reason to conclude that such opportunity for final action would be insufficient under the VBA. Put differently, nothing in the VBA's reference to a ''final agency decision'' suggests that the VBA reserves to VA broader or more inviolate decisional authority than other agencies are assumed to have by virtue of Title VII's references to agencies' ''final action.''

We have found nothing in the statute or legislative history to suggest that Congress intended the Director of OEDCA to be more independent of EEOC regulation than the officials of other executive branch agencies responsible for taking final agency action on employment discrimination complaints. To the contrary, the House Report explicitly stated that ''[t]he OEDCA is expected to enjoy a level of independence comparable to that of administrative law judges employed by other federal agencies.'' H.R. Rep. No. 105–292, at 8. That statement indicates that the enactment of the VBA was intended as a remedial measure to address a particular problem in VA's employment discrimination complaint resolution system by reallocating and insulating EEO functions within the agency; the VBA was not meant to shield that system against regulation by the EEOC on the same basis as the Commission regulates the systems within other executive branch agencies.

It is consistent with the general intent of Congress to read the VBA as providing OEDCA with independence within VA, and not as carving out an exception to procedures mandated by the EEOC. It appears that both the VBA and the EEOC's Proposed Final Rule are motivated to some extent by the same concern: an employment discrimination complaint resolution system that allows an entity to judge its own actions is likely to be perceived as biased against complaining employees. In its report on the VBA, the House Committee on Veterans' Affairs described the fundamental problem that prompted the remedial legislation:

The [Veterans' Affairs Oversight and Investigations] Subcommittee has concluded that a culture of tolerance of sexual harassment and abusive behavior exists at certain VA facilities, and that the policy of "zero tolerance" of sexual harassment is insufficient to address these problems. Consequently, the Committee believes it is critical for VA to establish and maintain an EEO complaint resolution and adjudication system that is both in fact and in the perception of VA employees fair, impartial and objective. The complaint process should be completely free and independent of undue influence, and the appearance thereof, from supervisors, line managers or directors. Objectivity and fairness should permeate the complaint process, from its initial informal stages through the Department's final agency decisions. Accordingly, the Committee has concluded that the processing of unlawful discrimination complaints should occur outside the particular facility where the alleged discriminatory conduct was said to have arisen, and that final agency decisions on the merits of a complaint should be made by a quasi-independent entity, the Office of Employment Discrimination Complaint Adjudication (OEDCA). The OEDCA would be headed by a Director who would report directly to the Secretary of Veterans Affairs or the Deputy Secretary. In addition, the Secretary should provide a work place free of harassment and discrimination by ensuring that employees and managers alike receive the education and training necessary for proper behavior in the workplace. The Secretary should be held responsible for ensuring that employees and managers are accountable for their conduct and behavior.

H.R. Rep. No. 105–292, at 5.

Part of the specific problem revealed at the hearings on the bill was that VA employees perceived the VA employment discrimination complaint resolution system as unfair. VA employees feared that their directors, who were also their EEO officers, would not impartially evaluate EEO complaints, and would use their supervisory authority to retaliate against employees for complaining. The House Report explains:

The Committee believes that removing the facility director from [EEO] duties would address the concern among VA employees that an employee who files an EEO complaint is, in effect, making a claim against the facility director. Some VA employees who have been discriminated against believe that it would be futile to file an EEO claim because the facility director would oppose the claim

> as reflecting poorly on management. Consequently, too many VA employees fear that if they file an EEO claim, not only is it unlikely to be resolved in their favor, but they might be punished by the facility management via transfer, demotion or other forms of retaliation.

H.R. Rep. No. 105–292, at 6.

Congress in the VBA responded to those problems by separating the function of VA review of EEO complaints from the chain of supervisory authority over VA employees. In describing "[t]he operating independence of the OEDCA" as "its most important feature," H.R. Rep. No. 105–292, at 8, the House Committee on Veterans' Affairs referred exclusively to the OEDCA's independence from VA's Office of General Counsel ("OGC") and made no reference to independence from regulation by the EEOC. The division of responsibility between the OEDCA and the OGC that the VBA established could continue under the Commission's PFR.

You base your argument in favor of VA independence from EEOC procedures on the fact that, whereas section 101 of the VBA explicitly provides that "[t]he provisions of this section shall be implemented in a manner consistent with procedures applicable under regulations prescribed by the Equal Employment Opportunity Commission," VBA sec. 101(a)(1), § 516(h), 111 Stat. at 2279, nothing in section 102 of the VBA, which established OEDCA, similarly refers to EEOC regulations, VBA sec. 102(a)(1), § 319, 111 Stat. at 2280. *See* VA Request at 2–3. We draw a different conclusion from that text and the related legislative history.

Section 101 of the VBA addresses VA's system for handling employment discrimination complaints in general terms; section 102 addresses a particular aspect of that system. One of the "provisions" that section 101 directs be "implemented in a manner consistent with procedures applicable under regulations prescribed by the Equal Employment Opportunity Commission" is a general requirement that the Secretary establish and administer an EEO complaint resolution system that is, and is perceived to be, "objective, fair and effective."[4]

The best interpretation of section 101's reference to "the employment discrimination complaint resolution system within the Department" includes the functions of the OEDCA established by section 102. Thus, despite the fact that section 102 of the VBA does not reiterate the requirement that OEDCA employ procedures consistent with EEOC regulations, section 101 effectively requires the Secretary

---

[4] The pertinent VBA provision states.

> The Secretary shall provide that the employment discrimination complaint resolution system within the Department be established and administered so as to encourage timely and fair resolution of concerns and complaints. The Secretary shall take steps to ensure that the system is administered in an objective, fair, and effective manner and in a manner that is perceived by employees and other interested parties as being objective, fair, and effective

VBA, sec. 101(a)(1), § 516(a), 111 Stat. at 2278.

to ensure that OEDCA, as an important component of the Department's employment discrimination complaint resolution system, discharges its responsibilities "in a manner consistent with procedures applicable under regulations prescribed by the Equal Employment Opportunity Commission."

This interpretation is consistent with the overall intent of the VBA's drafters. Congress, presented with the problem that VA's system for resolving employment discrimination complaints was perceived as unfair due to bias or a perception of bias by Department EEO officials, sought to amend VA's system to better ensure impartiality. Nothing in the legislative history of the VBA suggests that Congress was seeking to give VA a unique exemption from the otherwise applicable regulations of the EEOC.

## Conclusion

For the reasons discussed above, we conclude that the Veterans' Benefits Act of 1997 does not exempt VA from the EEOC's proposed final rule.

CORNELIA T.L. PILLARD
*Deputy Assistant Attorney General*
*Office of Legal Counsel*